## GARDNER v. NEWHOUSE REALTY CO.

No. 4651.   Decided April 17, 1928.   (267 P. 186.)

*J. W. McKinney* and *Powers, Riter & Cowan,* all of Salt Lake City, for appellant.

*Henry D. Moyle* and *J. M. Christensen,* both of Salt Lake City, for respondent.

STRAUP, J.

The plaintiff brought this action against the defendant to recover damages for personal injury alleged to have been sustained by her through the negligence of the defendant. The case was tried to the court and a jury. At the conclusion of all of the evidence, the court, on motion of defendant, directed a verdict in favor of the defendant on the ground of insufficiency of evidence to establish the charged

negligence against the defendant. The plaintiff appeals. The question presented for review relates to that ruling.

Defendant was operating the Newhouse Hotel in Salt Lake City. In connection therewith it operated elevators to carry its guests and other passengers from one floor to another of the hotel. At the time in question a wedding party as guests were being entertained at the hotel. The plaintiff was one of the party and one of the guests. In the complaint, it is alleged that, after the wedding dinner, the party, including the plaintiff, proceeded to one of the elevators of the hotel to be carried from the main floor to the mezzanine floor, the next floor above, and as she, with the rest of the party, was about to enter the elevator, and before she had opportunity to get in a safe position on the elevator, the defendant suddenly and negligently started the elevator, and, as it ascended, the plaintiff was struck on the shoulder or shoulder blade by the top of the entrance of the elevator or projection on the floor above, thereby bruising and injuring her shoulder, back, and spinal column, and wrenching and injuring the vertebrae.

Evidence was adduced to show that the entrance door to the elevator is not on or a part of the elevator cage itself. The doors are on the floor landings inclosing the well in which the elevator is operated. The space between the floor of the elevator and the entrance door is about four or five inches. The motive power of the elevator is electricity. There is a safety switch on each door. The elevator cannot be operated if the door of the entrance is open. It is necessary to close the door to connect the electrical curent. However, the closing of the door thereby connecting the current and starting the elevator are or may be substantially simultaneous. A person standing on the elevator with his shoulder or other portion of his body extending within or over the open space of four or five inches between the floor of the elevator and the door as the elevator is put in motion and ascends is in danger of being or apt to be struck by a beam or framework of the door, or

other projection on the floor above. There is no substantial dispute as to that. Because of that condition, a jury may well find that, before the elevator is put in motion and an ascent made with it, due care required the operator to see that the passenger or passengers on the elevator are back a sufficient distance from such open space so as not to be exposed to the danger of being struck by the beam or projection on the floor above as the elevator is ascending. Certainly such care may be declared as matter of fact if not as matter of law, especially in view that the defendant, operating an instrumentality wholly under its control in so carrying its guests and passengers, owed them a high degree of care.

Further evidence was given to show that, when the wedding dinner was over, the party consisting of eight persons, proceeded towards the elevator to be caried to the floor above, the mezzanine floor. Six of them entered the elevator and, when the operator closed the door, and started up, or was about to start up, the operator's attention was called to the fact that there were other persons of the party who were left out. The operator thereupon stopped, and lowered the cage and opened the door for them to come in. The rest of the party consisted of the plaintiff and a lady with her. The lady entered first, and then the plaintiff. Immediately after the plaintiff stepped on the elevator, as some of the witnesses testified just as she was in the act of entering the elevator, and before she or the lady who accompanied her had opportunity to turn around, the operator hurriedly and suddenly started the elevator and ascended with it, violently striking the shoulder of the plaintiff, or her back between the shoulders, against the beam or projection at the mezzanine floor, throwing the plaintiff on her hands and knees on the floor of the cage, and thus produced the injury complained of. Evidence was given to show that plaintiff's stepping on the elevator, the operator's closing the door and starting the elevator, and plaintiff's striking the beam or projection, were all done quickly, a matter of

mere seconds, and, because the operator was requested to lower the cage after first starting it up, and because of the delay thereby occasioned, the elevator, when plantiff stepped on it, was started up hurriedly and suddenly. Within a half hour or more after the accident friends of the plaintiff at the hotel examined her back and shoulders, and found a pronounced bruise about the size of a hand between the shoulders, and at or near the base of the neck. Testimony was given by physicians that the plaintiff sustained a somewhat serious injury to her back at or near the base of the neck and to the vertebrae.

The foregoing facts as to the happening of the accident were testified to by five witnesses on behalf of the plaintiff, including herself, all members of the wedding party and on the elevator at the time of the accident. As to the happening of the accident the defendant called but one witness, the operator. Her testimony as to that was that six of the party entered the elevator and faced the door when she closed the door and started up. She then was told that there were others coming. She thus lowered the cage, opened the door, and waited, "and no one came; so I looked out to see if some one was coming, and they were coming and taking their time; so I waited for them to enter the elevator. When they entered the elevator, everyone faced the door except Mrs. Gardner (the plaintiff). She stood even with me in the elevator, her feet right flat on the floor. I went to shut the door, but it didn't lock. I reopened it and locked the door, so I turned the elevator on, and, as I turned round to tell her to face the door, I noticed her stumble to the floor, and grabbed hold of her arm. She didn't fall on her hands, she fell on her knees, and the lady opposite me helped her up. I let her out on the mezzanine floor. She stood there in the elevator until the others got out; then followed them. Her shoulder was not struck by the mezzanine floor. It didn't touch the door, nor any part of the floor above. * * * She (plaintiff) had plenty of time, because I walked over and shut the door and locked it, and went back to my motor

again, and I walked behind her, so she was in the elevator, and her feet were right on the floor. * * * I noticed her lose her balance, and she fell so quickly. * * * When the elevator started up, she lost her balance, and went back against the door. She fell over on her knees in the elevator. * * * The whole trouble all happened very quickly.

No evidence was given on behalf of defendant to show what it was that caused the plaintiff to fall on her hands or knees, except that she stumbled after stepping on the elevator, or lost her balance as the elevator started up. Nor was there any evidence given on behalf of the defendant to show that, before the elevator was started up, the plaintiff was admonished to stand back, or to turn facing the entrance, or that the elevator was not started before the plaintiff had turned and faced the entrance. It is manifest that the plaintiff could not have sustained the bruise and injury between her shoulders and at the base of the neck as testified to by her witnesses and by her physicians by merely losing her balance and falling on her hands or knees on the floor of the cage. Of course, it is the contention of the defendant that the plaintiff sustained no such injury as claimed by her; that losing her balance and falling on her hands or knees occasioned no injury; and that whatever injury, if any may have been sustained by her, was not due to a sudden or negligent starting of the elevator or the negligent operation of it. But the evidence adduced on behalf of the plaintiff shows quite the contrary. That is what the lawsuit was about. On the record we do not say either party was entitled to a directed verdict; but it would seem that plaintiff was more nearly entitled to such a direction than was the defendant. We think the court erred in taking the case from the jury.

The judgment of the court below is therefore reversed, and the cause remanded for a new trial. Costs to appellant.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.